On behalf of the Appellant, Mr. Dimitri N. Teofano. On behalf of the Athlete, Mr. Stephen Bartholz. Good morning, gentlemen. Whenever you are ready, sir. My compliment to the clerk, he's the only one in the last ten years who put an accent in my name in the correct place, which is shocking. Well, he probably will be the only one up here who can do that, so congratulations, Mr. Clerk. I respond to hear you come over here. Members of the panel, there are two ways you can handle this case, the easy way and the hard way. The easy way, of course, is to say that since we have a contract and we have a clear case of incorporation by reference of terms of the AAA rules in that contract, which unequivocally provides that you can and may... But isn't that somewhat premature? Don't we have to first decide that the contract applies and decide whether or not we should even go to arbitration? That's true. It is one of the arguments that we make that on its terms, the contract doesn't really apply to these particular parties. But assuming that is the case, the easy way would be to say the rules are incorporated by reference and, therefore, one can and may go to small claims. The hard way would be to address all the other issues that are raised in the briefs, such as the conscionability or non-conscionability of having two residents arbitrate the case in Arizona over $1,900. With respect to the conscionability, didn't your client have the opportunity to object to that or to address that issue and he never did? No. This is a contract of adhesion. It's all small print. I mean, I know that... The arbitration clause is in small print? I do not remember whether this particular arbitration clause was in small print, but it's usually hidden. I don't envision at this point. The point is those things are normally non-negotiable. Those are contracts of adhesion. They are held to be valid and binding generally, but the reality of the marketplace is that, no, you can't really negotiate those terms. So there was no opt-out language in the contract saying that he could write within 30 days to auto-life Rx to opt out of that provision? I don't remember. Sometimes there are, sometimes there are not. I don't remember in this particular case. Maybe it's the reason you don't remember is because when you filed your complaint, you only filed the first page of the contract and not the other pages? No, no, no, no. Actually, we did not have that. He was not given that. I take issue with the suggestion that we were trying to hide it. There was no reason to attach multiple pages because I knew the law, which is we can go to small claims. End of story. And you have authority for that? You have case law for that? Because that's one of your sanction motions and when I looked at the sanction motion, I didn't see any authority that you were citing for that. Authority is the rules of AAA. No, I'm looking for authority here. Common law authority. Well, common law authority, here's the issue. This is the case of the first impression. Then you're trying to impress upon us this first impression and you want us to make the law. Is that what you're saying? I think that would be the first opportunity for, as far as I know, Illinois court to issue an opinion with respect to whether or not the rules of AAA as incorporated in the contract mean what they say. Well, did you ever stop to think as you presented this to the trial court that while you were very familiar with these contracts, maybe the trial court wanted to read the whole contract? That was not the issue when I filed the complaint. When we had the hearing on the motion to dismiss, then of course I presented multiple pieces of paper to the trial court. In fact, I believe that the other pages of the contract either were not available to us or I don't remember the reason why it was not attached. It was just not relevant at the pleading stage. As far as I recall, at the hearing stage, I presented multiple documents to demonstrate to the trial court that indeed the rules say what I claim they said. And if I reminded you that the actual limited warranty agreement about the controversy being settled by arbitration was in larger print, would that jar your memory at all? No, I don't think so. I'm sorry. But was it small print or large print? I accept for the purposes of this argument that we have a binding arbitration contract. Okay. The binding arbitration contract, as I recall, specifically references the rules of AAA. So even assuming that we have a contract and even assuming that we have the contract applying to these two particular parties, because the language, as I recall, and as I pointed out in my initial brief, was very, I don't want to say ambiguous, but I don't think it unequivocally binds the dealer as opposed to the service contractor. Well, who did your client enter into the contract with? Who did you sign the contract with? With the dealer. With the dealer. Assuming that is the case, assuming, although I do contend that it may not be the case, assuming the contract is indeed between, I mean, we know that the contract is between the dealer and the client. Assuming the arbitration clause covers these entities rather than the third entity from Arizona, which would explain the Arizona venue. Assuming that the contract, as I recall, specifically says under the rules of AAA, or some language to that effect, well, the rules are very clear. You can go to small claims. And who's to make that decision? A trial court or the arbitrator? That is a very interesting question. According to the AAA, there is no, again, under their own rules, it doesn't have to go to arbitrator to make that determination because the rules say you make all the small claims without going to us. It would make your question, Your Honor, is a, requires a very involved answer because that is actually one of the issues in the arbitration world, which is always a bone of contention as to who decides. I think most of the times judges decide with or without much analysis. There is some authority that sometimes matters. When the arbitration contract specifically says for any decisions you have to go to arbitration, then I think the answer to your question is I think the arbitration provider has to decide. Well, again, let me remind you of what the contract said. The party specifically agreed to the binding nature of the arbitration, period. You may opt out of this requirement for arbitration by notifying AutoLifeRx in writing via certified mail at the address below within 30 days after signing this agreement. If that had occurred, yes, you could have gone to small claims. It did not occur. I do not believe so because I think that confuses two issues. First of all, the language is, the language which you just quoted pertains to the service contractor, which is not a party to this lawsuit. It does not refer to the dealer. But assume for a moment, and I don't argue at all, that there was an opt-out. We have a binding arbitration clause. That's not the issue. I accept that as a given. The issue is that under the terms of that very clause, it says you follow AAA rules. AAA rules say you can go to small claims. You still haven't answered the question. The question that my colleague asked you is who decides whether that rule applies. The trial court in your motion? Or does it go to an arbitrator to look at the totality of the arbitration rules and decide whether or not it applies? Yes. I tried to answer that and I will give it a second shot. Under the rules, it depends on the language of the contract. In this case? In any case. In this case? Or in this case too, yeah. Generally speaking, it depends on the language of the contract. If the contract, okay, speaking generally and then I will address the specifics. In general, if the language is silent as to who decides, I think the courts say judges decide. If the language says specifically for whatever issues that you have to have a decision, you have to go to arbitration in the first place, then the arbitrator decides. In this particular case, you are… If in this contract it's not included in the contract, then isn't it excluded? I'm sorry, I didn't… If that language isn't included in this contract with respect to the arbitration, isn't that language then presumed to be excluded? Yes, and then the judges decide. But let me address specifically who decides in this particular case. In this particular case, we have a rule of AAA, so the language in a sense is included and it's included contrary to the language. If it has to be decided, it has to go to arbitration because by their own rules, you don't go to arbitration to decide. And if you think about it from a policy standpoint, we have supposedly a summary proceeding, which is small claims, and it's quick and efficient. And we have a quick and efficient proceeding, which is arbitration. So with two quick and efficient proceedings, it makes no sense to go here, there, here, there. The rules are very clear. They say that you can go to small claims without coming to us. Well, that gives the answer to specifically this question. It's a simple question. To my mind, it's a simple issue in cooperation. Those are the terms. Then what exactly are we here for? We are here for a decision because from a plaintiff perspective, the specific terms of the contract were not followed. The specific terms of the contract, as incorporated, are you can go to small claims. But what happened below is that we went to small claims and we were dismissed, not stayed as the statute. That's another issue of first impression, as far as I know, in the Illinois appellate system. Dismissed rather than stayed contrary to the specific language of the statute. And so we're here because there was a dismissal under section 619 of the court of sole pursuit. So a trial court is to follow the rules of the American Arbitration Association, even though, well, that's what you're just saying. No. But we'll say that it can go to small claims, and therefore the trial court should know those rules and should follow those rules. No. The trial court should follow the specific language of the contract. But the contract doesn't have the AAA language in the contract. Yes, it does. Here's the thing. It does. Where? Well, it's by incorporation. It says in the contract, following the rules of AAA. I cited the cases. When there's a reference like that, the rules of AAA I incorporated as part of the contract. That's the whole thing. All three of us on this panel have taught our fellow judges at the trial court level and the appellate court level how to do certain parts of their job. I have never, ever seen a course on the rules of the American Arbitration Association, ever.  So how is the trial court to know that they have to follow that, and what is the authority that says they shall follow it? They are not to know, and there is no authority. The legal theory we're dealing with is not specifically referencing the rules of the AAA. It's not that at all. It is rather a straightforward application of the principle of incorporation by reference. Contracts have multiple pieces of paper all the time. And we like to usually read all the pieces of paper that are attached. Keep that in mind for the future. I understand that, and I do believe, though, that when the time came to a hearing on the motion to dismiss, I attached multiple pieces of paper, including materials from AAA. I think there was a stack this thick of materials from AAA which included those rules. So the issue... You may proceed. Finish your thought. The issue here, in addition to the issue of unavailability of a dismissal in the presence of clear language in both statutes, shall be stated that under either scenario it should not be dismissed. Incidentally... Did you present that argument to the trial court? Oh, yes. Oh, absolutely. It was in the briefs. In fact, what I was... That's my last sentence. What I was explaining is this. There is a reason why cases like that should be stated. Now, of course, there is a practical reason, because every litigant hopes that he will win at arbitration and then he will come to court and will be able to enforce the judgment. But there is a more immediate reason that would have applied to us. If, for example, hypothetically, the case was stayed, we were kicked over to arbitration and had to proceed, the defendant would have had to pay a $3,000 filing fee under AAA rules. The plaintiff pays $200, the defendant pays $3,000. There is no way they would have done it and therefore would have been back to the court after the case was stayed, saying, well, they win the right to arbitrate. So in this particular case, it's kind of... It did not allow the process to play through because the statute was not followed as written. I have a couple of questions. Yes. What is the amount at issue in this complaint, whether it be an arbitration or small claims? How much is your client asking for? $1,900. $1,900. Did your complaint or did some argument you made talk about $900? That you thought it was unconscionable for $900? I was mistaken. I forgot the one. In fact, it is $900. It's $1,900. The complaint itself was filed... For $5,000. $4,499. It was one of those jurisdictional divisions which determined the filing fee. It was the smallest... So you just asked for a dollar less than the cutoff between small claims and mandatory arbitration. Oh, no, no, no. No, no, no, no. The small claims jurisdictional limit is $10,000. In DuPage County, in small claims, there are various divisions of how much you're asking for. And so with $1,900 at issue and some reasonable possible aggravation agreements, that was the... Because it was not a jury claim, it would have not been sent... We had a judge claim only. You'll have an opportunity for a response. Thank you.  Mr. Varhola? Yes, Your Honor. Thank you. Good morning, judges. My name is Steve Varhola. I represent the Applebee's Super One Development and Mr. Jason Samham. Let me ask a preliminary question. At the time... I'm assuming today your client is in good standing with the State of Illinois. Yes, Your Honor. And was your client in good standing with the State of Illinois at the time this contract was entered into? Your Honor, I cannot make that representation. I do not know. I know that the argument was presented at the trial court explaining that there was a reinstatement filed, that it did relate back to the date of the contract and that the acts would be... I'm missing the word here. It's not affirmed, but the acts would all be... I understand. Not ulterior, as I believe. Right. But you are in good standing today? Yes, Your Honor. Thank you. All right. Let's proceed. Your Honor, I believe we're here now for only one issue. The appellant has stated to the court that we have a binding arbitration agreement. The trial court's discretion and only task at that time is to determine whether or not it has a binding arbitration agreement. If it does have a binding arbitration agreement, it orders the parties to go to arbitration. That's what... But counsel's argument is we have a binding arbitration agreement that says the rules of the American arbitration, AA, AAA, apply, and therefore the judge should have allowed small claims to proceed. Where is that in the agreement, and where is that in this case? Number one, Judge, that's not in the agreement. Number two, that's not the law. The trial court... How do you explain his Exhibit D? Now, is Exhibit D, Your Honor, attached to the reply? I'd like to step back and point out the arguments that he's made first. He's argued that the AAA consumer due process protocol is incorporated into the arbitration contract. He also argues that the consumer-related disputes supplementary proceedings are incorporated into the contract. That's not the case. When you take a look at the arbitration rules, there are rules, there's a protocol, there are supplementary procedures, there are also commercial rules, there are also consumer rules. What you need to do is review them closely, and when you take a look at, first, the protocol. Protocol are not rules. All they are is a self-regulation by the AAA to get the parties that put together arbitration agreements to try to, I guess, even the playing field when they put together arbitration provisions. It's simply a regulatory guideline that the AAA refers to. In my case that I pointed out from Texas, they pointed that out. That's exactly why I cited that case. They took a look at this precise issue, and they said, that's not the law, that's not the rule of the AAA. It's just a regulatory guideline. Now, with respect to the supplementary proceedings, which I think is really in answer to your query, Judge, they say AAA, it's their discretion to determine whether or not to apply the supplementary proceedings. That's what Appellant's asking. Apply this. It's incorporated. AAA is saying, it's our discretion. Now, if the parties have an issue, then they need to bring it to our attention or bring it to the arbitrator's attention. The arbitrator will then make that decision. That's what the case in Texas is stating. So he missed a step. Instead of just going to the court and saying, do we arbitrate or don't we arbitrate? The court says, yes, you arbitrate. Then he could have gone on to the arbitration and made these arguments. So you're saying his arguments are premature? Your Honor, yes. His arguments are premature, and that is the procedure, according to case law, that you do go to AAA. Appellant had every opportunity to go to AAA and make an objection. By the way, Your Honor, you did point out, the arbitration provision contains an opt-out provision. Appellant didn't opt out. He had 30 days. And you can see this from here. I'm only doing it for purposes of showing that it's not inconspicuous. It's the third page of the documents in bold, and it's underlined. With the opt-out, I mean, I think counsel's additional argument is she couldn't opt out because, or he couldn't opt out, because there might have been maybe some disagreement with this third party, auto, RX, whatever it's called. You're saying that his client could have opted out, and there would have been no disagreement, to the best of your knowledge? I am saying that, Your Honor. I believe that if he would have followed the notice provisions in here, provided the notice to, I apologize, Your Honor, I believe it's... I can't remember either. It's auto something. Auto life RX. If they would have provided the notice to auto life, then the arbitration provision as a whole would not apply, and Mr. Gregory would have been able to go straight to small claims court. I'm not arguing that he's entitled to small claims right now. He's not. He needs to follow the procedures. The parties have a binding arbitration agreement. They must go through AAA. I'm not aware of any case law that says that a trial judge, whose only task at the time is to determine whether or not there is an arbitration agreement, needs to then determine what the rules of the game are going to be at that arbitration. That's for whatever form... Well, it's not the rules of the game. It's whether the game should be played at all. So whether or not the exclusion applies, that's really what's at issue here. Right? I would agree with you, Your Honor, but I disagree that it's an issue. There is no exclusion here simply because the consumer protocol is not incorporated, nor the supplementary proceedings in Exhibit D, Your Honor. I did not mean to get away from it. Exhibit D, Your Honor, that is something that just took place. That's something that just came into effect September 2014. Those are the consumer rules. Those did not apply back when this contract was entered into. That was not the intent of this arbitration agreement. Full intent? Don't we just look at the four corners of the document? We're going to get into parole evidence. Aren't we getting far afield from exactly what the contract says? Your Honor, maybe I got ahead of myself. Okay. Fair enough. Four corners of the document indicate that the American arbitration rules would apply to this particular, any controversy or breach of contract. How about his argument about conscionability? Shouldn't that come into play at this point when he is going before the court with respect to whether or not there is a binding arbitration or not binding arbitration? When would he make that argument, in your opinion? On conscionability? That argument is raised to the trial court, and I believe Appellant did raise the argument. And the trial court found that the arbitration provision was conscionable. It was not procedurally or substantively unconscionable. And in this situation, there were no allegations that it was one-sided or overly harsh. There were no allegations that there was unequal bargaining power here. None of those allegations were raised to the trial court. Well, how can it be? I mean, let's step back even one further. How can it be unconscionable if the plaintiff petitioner had an opportunity to opt out altogether and never did? One of the arguments that I raised, Your Honor, he has that opportunity from day one for 30 days to opt out. If he opts out, if he does not opt out, he waives that right to claim that it's unconscionable. It's not unconscionable. He controls. He has the opportunity to control whether or not he's going to be bound by this. And again, I will ask the question, although I know I'm repeating myself. It would not have raised an argument or should not have raised an argument from the other side because it was incorporated in this contract, correct? You may opt out. End of discussion. You might have argued about was it the 31st day or was it the 29th day, but you wouldn't have argued if it was within the 30 days. No, Your Honor. No. I think really what's at issue here and the court needs to focus is the appellant's trying to attack the right to arbitration. The parties have a right to agree that they want to go to a certain forum. And that's what happened in this situation. There is an arbitration agreement. There is a contract. Justice is correct. Four corners of this document indicates, and it's in bold, the parties specifically agreed to the binding nature of arbitration. They're going to arbitration. What that section doesn't say that we're all talking about here, it's bold. You showed it to us. I've read it. It doesn't say that that arbitration will take place in Arizona. It does, Your Honor. There is a line. Right, not right there. I mean, it's farther down, correct? It's in bold, Your Honor, and it's further down in that same paragraph 10. Yes, Your Honor. And it does indicate that the location of all arbitration at a court hearing shall be in Maricopa County, Arizona. That's about three sentences after the actual arbitration language. The parties specifically agreed to the binding nature of the arbitration. Right there, it doesn't say that arbitration shall take, you know, all arbitration shall take place in Maricopa County, correct? It says it down a little farther. It does not say it in that sentence, Your Honor, but it does say it, I believe, four sentences later in bold. I must stress in bold, Your Honor, because I don't want there to be an inference that it's tucked away. It's not tucked away. It's in bolder. It also indicates that the laws of the state of Arizona would apply as well. Well, the state of Illinois can apply different laws. Absolutely. And we are often called upon to do that. That's not the biggest problem. The biggest problem, I think, as he's identifying, is the situs of the arbitration. Your Honor, that's the only problem that he's pointed out, and that's not enough. Illinois courts have consistently upheld forum selection clauses, especially when the only argument is that the convenience, the convenience is, I guess, it's not convenient to one of the parties. There is an impressive body of case law out there that upholds the forum selection clause. Now, Your Honor, again, taking a look at the arbitration rules, the AAA indicates that it will administer its own rules. It will administer its own hearings, and I believe it's in the preamble in Exhibit D. The court will consider that issue, too, if they feel the need. I'm not the court. I apologize. AAA will consider that issue as well. If they want to arbitrate it in the state of Illinois, I believe AAA has the discretion to do that, so long as it's addressed by the parties. So, once again, I guess I bring the argument full circle, and I say you need to bring that issue up with AAA, not at the trial court. Let me ask you something. Yes, Your Honor. Right below the bold and underlined, it says the location of all arbitrations or court hearings shall be in Maricopa County, Arizona. Did you ever bring a motion to dismiss based on venue? Your Honor, I believe... Did you incorporate that argument at all? I don't believe so, Your Honor. I was not counsel at the time, but I'm not using that as an excuse. Is that not a waiver? I believe the only motion that was raised was a motion to dismiss because of the arbitration clause. Have you waived your right to have all the proceedings in Arizona, then? I don't believe so, Your Honor. Why are you not objecting? I do not believe so, Your Honor. Your opponent, he's raised the issue that 2619A9 does not apply to arbitration clauses, but more to affirmative defenses. How do you respond to that? I don't believe that that's his argument, Your Honor. I believe his argument is you just can't dismiss a case when there is an exclusive arbitration clause present. And there is a wealth of case law that says the trial court has the authority to dismiss a case based on an exclusive arbitration clause, especially when all the issues that are being raised in the complaint would be dealt with in the arbitration. Under 2619A9? Under 2619A9, affirmative matter. And it doesn't negate the claim. It still has the claim. He just has to go to arbitration to have that claim adjudicated. Let me ask you this. I mean, what's the overall purpose of arbitration? Your Honor, may I step back just quickly to finish? As long as you answer my question, you can step back to the door if you want. I will answer your question, by no means am I sidestepping it. I wanted to indicate that the appellant is the one who brought the claim to the, in Illinois. And you didn't object to that? I don't believe, Your Honor, I believe that the motion to compel arbitration would constitute an objection to that. Yeah, but you didn't. You didn't file a motion based on venue. Let's just set that aside. Would you clarify your question again, please? Yeah, what's the overall purpose of arbitration? Overall purpose of the arbitration, as I understand it and as case law has indicated, is to be an efficient route for parties to resolve their issues. But what is more efficient than a one-time appearance in a small claims court where it's a bench trial and jury has been waived? That's not the case here, Your Honor. That's not what this would be. No, no, no, that's not my question. But that's not the case here. He just got up here and said small claims, he waived his right to a jury trial. So my question to you is what is more efficient than a one-time appearance, excuse me, for a bench trial in a small claims court? Your Honor, the parties, may I finish? Oh, yes, yes. The parties agreed to arbitrate their issues. That's not my question. My question is what is more efficient, possibly more efficient, than a bench trial in a small claims court? An arbitration. In Arizona. In Arizona, as the parties agreed to it, Your Honor. Even though the rules say, recognizing that small claims court is highly efficient, we exclude. Which rules are you referring to, Your Honor, because I disagree with you. The AAA rules. The AAA rules do not indicate that. The consumer protocol, which appellant uses in the supplementary proceedings, which appellant uses to try to prop that argument up, doesn't apply, Judge. Because? Because. It doesn't. They're not rules. They're regulations. You can't say it doesn't apply because it doesn't apply. I just did. I know. So we're going to strike this. They're not incorporated. They're not incorporated into the arbitration agreement. They're not incorporated at all. They're not adopted because they're regulations, not rules in the supplementary proceedings. And as I've indicated before, that's an issue for the AAA to determine whether or not it'll apply. The parties specifically agreed to arbitrate their issues. And if the arbitrator says... Let me just finish up. If the arbitrator says, you're right, small claims court, this arbitration doesn't apply here. If appellant followed the proper procedure and addressed the issue with AAA... If the arbitrator decides... Then yes. Then you go back to small claims court. Then you would go back to small claims court. Correct, Your Honor, because the AAA would have made that determination. So then was it error not to stay the proceedings rather than dismiss it? Absolutely it was not an error, Your Honor. All the issues were arbitrable. The trial court determined that. Nothing requires the trial court to stay the proceedings. Trial court can dismiss it. Parties go to arbitration. Now appellant in his brief argues that the court never compelled arbitration. I disagree with that. That shows the disingenuousness of the arguments. You take a look at the record, that's all the judge was talking about was this needs to go to arbitration. And I think the court needs to focus on the amount as well. The amount as well is interesting. The trial court found it interesting. This isn't about $1,900. This is about $5,000 in attorney's fees thereafter. This is about a plaintiff's counsel who's trying to pick his forum. He doesn't have that option here. He's frustrated by it. All I ask the court to do is review the record and affirm the trial court's holding has every right to dismiss the case and order arbitration. Thank you. Anything else? No. Thank you. Counsel, do you have any reply? Yes. Well, with respect to attorney fees, actually, that is incorrect. The only fee-shifting claim was the consumer fraud claim. And unlike my normal car cases where under Magmoor's attorney fees are considered the costs, we are limited to the jurisdictional amount. Attorney fees cannot be in small claims awarded on top of that, unlike Magmoor's. So that is just plain incorrect. The language I looked it up. In the arbitration agreement, Common Law Record 47, Appendix 11 says, Any controversy or claim arising out of relating to this limited warranty or breach thereof will be settled by binding arbitration in accordance with the arbitration rules of the American Arbitration Association. That's the incorporation. And the rules, admittedly, they played with the rules, but the new rules apply because the change is procedural, not substantive. I cited in the footnote in the reply brief the case law that says that's the rule that applies now. It applies to this case. And the rule says you don't have to go to arbitration. If someone decides, why isn't that someone a member of the group of the American Arbitration Association? Understand. I think I will address, I will attempt to answer that somewhat differently. 619, first of all, I disagree with Brother Counsel that 619 allows for dismissal based on arbitration clause. But, Douglas, isn't there plenty of case law and courts in the state of Illinois that have done that, have allowed for 619-89? Yes, there are two cases that say in one sentence no analysis, no explanation, and no citation to authority. I actually looked it up. Well, I'm not going to tell Justice Tice now on the Supreme Court that she did it without authority, without analysis. It is in the case, Your Honor. I'm sorry. There is no citation to it. It is one sentence. It doesn't really explain why. And more importantly, I appreciate your position. I don't want to tell her, but don't tell her I told you to. I understand that. My lips are sealed. My point, however, is there is only so much interpreting we can and should do. If a statute says shall be stayed, it doesn't mean may be dismissed. I think that's a little too much. Stay means stay. There is a particular legal meaning of that. And the idea of going multiple places in the supposedly summary proceeding strikes me as odd, because indeed the reason the AAA went through all, well, we all know what was going on. AAA was under, our arbitration providers were under a lot of pressure for being seemingly unfair. They went through a lot of trouble to make sure that their rules are absolutely within the propriety, and that's why the Consumer Due Process Protocol was established. That's why they said absolute unilateral right holds dispute to go to small claims. I wanted to address the case citation from Texas. It was not a consumer case. And under standard of review, I mean, it's a factual determination, but if we're talking about 619 motion, there is a standard of review for 619 motion as well. And all factual determinations must be determined against the mover. So if there is any doubt, they did not develop the record to indicate that it was not a consumer case. And in fact, the rules specifically say, and I cited the rules, that all kinds of warranty and service contracts are considered to be consumer rules. So whichever way you look from a legal standpoint from analysis of the rules, it was a small claim, I wanted to say it was an arbitrable matter. What I meant to say, it was a small claims matter. Assuming there was an arbitration between my client and the dealer, because our initial argument was that the arbitration clause really, the way it was written, was between my client and the service contractor. And that explains the seemingly bizarre choice of venue, because the service contractor was indeed in Arizona, but the way they wrote it, dealer is not our agent, dealer has nothing to do with us. My initial threshold argument is that arbitration clause doesn't apply as between these two parties in the first place. Assuming it does, however, the rules of AAA say you can go to small claims. Well, the trial court did give you leave to refile the conversion complaint, and you chose not to do that. Why didn't you just bring the conversion complaint against the one party that you believe is at issue here? Why did you include the other issues? Include where, Your Honor? Include the Ross issue, the consumer fraud issue. Why did you do that? Which, I mean, if we're listening carefully, called into effect this arbitration agreement. Why didn't you just deal with the conversion claim? And why aren't you still dealing with the conversion claim? You had the opportunity. There are two questions here, and I will answer both. Well, why did I not sue on the conversion only? Well, because lawyers always take the shotgun approach, and I figured I didn't know which one would fly. In retrospect, if I knew what I know now, I may have done it differently. I don't know. Why I did not pursue it? Well, because in my judgment, there were a sufficient number of issues that I wanted to bring before you. And so, especially in light of the fact that the conversion count was dismissed, admittedly without prejudice, under 615, with no motion, in small claims, where 615 is supposed to be only by leave of court, and there was really not even a request for leave of court to dismiss the conversion count. And so, I, at that point, made a strategic decision that I wanted to come here. All right. I have one other question. And then I'll allow my colleagues to ask if they have anything in conclusion. Although your motions for sanctions are not before us, you did not, you're not appealing those in particular, you have some very interesting language in the motions for sanctions. Motions for sanctions are pretty serious issues, where we talk about somebody else did something wrong in violation of professional ethics. And yet, you use language like triple dog dares, weasel their way out of arbitration, and lawyers, defendants' lawyers can't be so stupid. Is there legal authority for those terms? No. But you use them. I regret using the last one. I do, I did dare them to go to arbitration. That was a point that I was making with respect to $3,000. They don't really want to go to arbitration. Well, if they knew what the exact amount was, maybe they could figure it out. They do know. They do know. Everybody knows that. That's in the rules. Well, wait a minute. They could have gone, and you would have gone to arbitration had you not appealed the 2619A9. Oh, no, no. My point is they don't want to go to arbitration. And the reason they don't want to go to, this is a gotcha. They don't want to go to arbitration because it costs too much money. The amount of money they have to pay as a filing fee in AAA exceeds the out-of-pocket losses to the client. I guess, so then my question is, why are you triple dog daring them? You probably should have just not filed an appeal and seen if they would have gone to arbitration, right? Oh, no. That would have been my responsibility to go to arbitration. And, yeah, that's true. There was one, there was another way of handling it to file arbitration. Wait for them to say, we're not paying $3,000. Right, right, right. And come, and come, but the problem is the case was not stayed. I could not come back to the court below and say, see, I told you so, in essence. I would have had to file arbitration. I would have had to wait another year with reminder letters asking them whether they're going to waive their rights to go to arbitration. And it happened to me before more than once. And then I would have had to refile the case in small claims again for the third time just to make a point that they waived their arguments. So, that's true. I could have done that. I do not deny that. But, it seems to me. I'm sorry. No, you can finish that thought. I have no thought. I lost my thought. Thank you very much, counsel, for argument. We will take the matter under advisement and a decision will be rendered in due course. We stand in recess for our next case.